UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JOHN SHIELDS, | } |
| Plaintiff, | } |
| v. | } Case No.: 2:19-CV-00922-RDP |
| CITY OF LEEDS, | } |
| Defendant. | } |

## MEMORANDUM OPINION

This case is before the court on Defendant's Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted. (Doc. # 8). The matter has been fully briefed (*see* Docs. # 8, 11, 12) and is ripe for review. After careful review, and for the reasons discussed below, Defendant's Motion (*see* Doc. # 8) is due to be denied.

**I.     Background**

This is an employment discrimination case wherein Plaintiff John Shields alleges race discrimination and retaliation against the City of Leeds Police Department. (Doc. # 16). Plaintiff is a 35-year old African-American male. (*Id.* ¶ 11). Plaintiff began his employment with the City of Leeds Police Department on September 21, 2010. (Doc. # 1 at 3, ¶ 13). He initially started out as a police officer but was promoted in June 2016 to the position of detective. (*Id.* ¶¶ 13-14). On July 19, 2018, Plaintiff began investigating allegations of a citizen impersonating a police officer. (*Id.* ¶ 16).

Plaintiff uncovered that on July 11, 2018, the Leeds Temporary Public Safety Director, Jim Atkinson, a Caucasian male, was impersonating a police officer and made an unauthorized traffic stop of George Pasvantis while using a City of Leeds vehicle equipped with blue lights and a siren.

(*Id.* ¶ 17). Atkinson's Alabama Peace Officer Standards and Training ("APOST") credentials had lapsed at the time he made this traffic stop. (*Id.*). Plaintiff also discovered that at the same time Atkinson stopped Pasvantis, the Mayor of the City of Leeds, David Miller (a Caucasian male), Atkinson, and Pasvantis were all involved in an ongoing personal dispute. (*Id.*).

On July 31, 2018, Plaintiff presented his investigation and findings to the Jefferson County District Attorney's Office ("JCDA") for screening. (*Id.* ¶ 18). The JCDA's Office asked Atkinson for his APOST credentials. He did not comply with that request. (*Id.*). Consequently, "no warrant was ever obtained against Pasvantis regarding the July 11, 2018 traffic stop." (*Id.*).

On August 14, 2018, Lieutenant Jeff Loebler, a Caucasian male, notified Plaintiff that he was scheduled to have a "determination hearing" that day with Mr. Atkinson at 1300 hours. (*Id.* ¶ 19). The determination hearing was "supposedly in response to a citizen complaint regarding Plaintiff's investigation of a burglary." (*Id.*). However, "[p]ursuant to [Personnel Board of Jefferson County] rules and regulations, a determination hearing is considered disciplinary in nature and must be convened by Police Department personnel." (*Id.*). Atkinson was not employed by the police department at that time. (*Id.*).

As a result of the determination hearing, Plaintiff was "demoted from a detective . . . to a patrol officer, thereby losing five (5) percent pay and a take home vehicle." (*Id.* ¶ 20). Plaintiff contends that a similarly-situated Caucasian male detective, Jordan Campbell, also had been the subject of a citizen complaint against him, but had not been demoted or otherwise disciplined. (*Id.* ¶ 21). On August 24, 2018, Plaintiff filed a Charge with the Equal Employment Opportunity Office ("EEOC") claiming race discrimination and retaliation. (*Id.* ¶ 22). The charge referenced the Atkinson investigation, determination hearing, and discipline administered. (*Id.*).

On September 11, 2018, Plaintiff was informed he was to have another determination

hearing on September 14, 2018.[1] (*Id.* ¶ 23). During the determination hearing, Mayor Miller informed everyone present that "an outside investigator would be brought in to investigate the incident that was the subject of the determination hearing." (*Id.*). Plaintiff was not permitted to testify at the hearing and his counsel was not permitted to speak on his behalf. (*Id.*). Also, during the hearing, Mayor Miller stated he was aware of the EEOC Charge Plaintiff filed. (*Id.*). Subsequently, Plaintiff claims that despite Mayor Miller's earlier indication, no outside investigator was brought in to investigate. (*Id.*).

On September 27, 2018, Defendant and the EEOC investigator discussed scheduling a mediation for Plaintiff's Charge, which was then set for November 29, 2018. (*Id.* ¶ 24). As a result of the September 14, 2018 determination hearing (the second determination hearing), on October 12, 2018, Plaintiff was suspended for four (4) days without pay and his authorization to do outside work was revoked indefinitely (*Id.* ¶ 25). This action was taken after Plaintiff's EEOC Charge was set for mediation. (*Id.*).

On October 18, 2018, Plaintiff "supplemented his pending EEOC charge and appealed his suspension and the suspension of his ability to work off-duty jobs to the Personnel Board of Jefferson County." (*Id.* ¶ 26). After this appeal, Defendant attempted to reduce Plaintiff's suspension so that Plaintiff had no appeal rights under the rules of the Personnel Board of Jefferson County. (*Id.* ¶ 27).

On March 7, 2019, an appeal hearing took place, and the Hearing Officer ruled in favor of Plaintiff, stating: "This Hearing Officer . . . recommends the City's actions in regards to Shields' suspension be REVERSED and charges set aside in this instance." (*Id.* ¶ 28). The Hearing Officer also recommended "that Shields receive any and all back pay and employee benefits to which he

---

[1] "Appearing at this determination hearing was [Mayor] Miller, personnel representative Brad Watson, City of Leeds attorneys, Plaintiff, and Plaintiff's counsel." (Doc. # 16 at ¶ 23).

would have otherwise been entitled and enjoyed absent the suspension." (*Id.*). On April 9, 2019, the Personnel Board of Jefferson County upheld the Hearing Officer's decision. (*Id.* ¶ 29).

Plaintiff filed this lawsuit on June 14, 2019, exactly 90 days after receiving his Right to Sue letter on March 14, 2019. (Doc. # 16-1). In Count One of his Amended Complaint, Plaintiff alleges that Defendant (specifically, Atkinson and Mayor Miller) discriminated against him based on his race in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991. (Doc. # 16 at ¶ 49). In Count Two, Plaintiff alleges that Defendant retaliated against him after he filed his Charge with the EEOC. (*Id.* ¶ 72).

## II. Standard of Review

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate

"more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. Appx. 136, 138 (11th Cir. 2011) (unpublished) (quoting *Am. Dental Assn. v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 570.

## III. Analysis

In its Motion to Dismiss, Defendant argues that Plaintiff's Complaint should be dismissed because (1) it fails to allege facts demonstrating a plausible inference of race discrimination; and (2) it fails to allege facts demonstrating a plausible inference of retaliation.[2] (Doc. # 17). The court addresses each argument, in turn, and concludes that Defendant's Motion is due to be denied.

### A. Plaintiff's Claim of Race Discrimination

"Title VII provides that it is unlawful for an employer to discriminate against an employee because of the employee's race." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th

---

[2] Although Defendant does not waive any objection to whether Plaintiff satisfied all of the administrative prerequisites under Title VII, it does not argue otherwise, and, for purposes of this Motion, the court will assume Plaintiff met every administrative prerequisite before filing his complaint.

5

Cir. 2015). "To state a race-discrimination claim under Title VII, a complaint need only 'provide enough factual matter (taken as true) to suggest intentional race discrimination.'" *Id.* (quoting *Davis v. Coca–Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008). Additionally, to establish a *prima facie* case of race discrimination under Title VII based on circumstantial evidence, a plaintiff may allege facts demonstrating that: "(1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was replaced by a person outside his protected class or was treated less favorably than a similarly-situated individual outside his protected class." *Smith v. CH2M Hill, Inc.*, 521 F. App'x 773, 775 (11th Cir. 2013) (citation omitted). However, as the Supreme Court has made clear:

> [T]he elements of a *McDonnell Douglas prima facie* case constitute "an evidentiary standard" for evaluating the sufficiency of a plaintiff's circumstantial proof of discrimination, "not a pleading requirement." In other words, Federal Rule of Civil Procedure 8(a) requires only a short and plain statement of the plaintiff's claim, sufficient to give the defendant fair notice of what the plaintiff's claim is, and, the grounds upon which it rests, and it does not require the plaintiff to plead a *prima facie* case of discrimination in order to survive a defendant's motion to dismiss.

*Caetio v. Spirit Coach, LLC*, 992 F. Supp. 2d 1199, 1211 (N.D. Ala. 2014) (citing *Swierkiewicz v. Sorema*, 534 U.S. 506, 510 (2002)); *see Surtain*, 789 F.3d at 1246.

Here, Plaintiff -- an African-American male (*i.e.*, a member of a protected class) -- claims that he was demoted and suspended without pay as a result of an improper determination hearing due to his investigation into the activities of Atkinson, Mayor Miller, and Pasvantis. (Doc. # 16 at 10, ¶ 43). Plaintiff has alleged facts demonstrating his experience and that he was qualified to perform his work. He also has plausibly alleged that Defendant improperly considered his race when deciding his discipline. In particular, he contends that a similarly situated employee, Jordan Campbell -- a Caucasian male -- was not subject to discipline after receiving an allegedly comparable citizen complaint. *See Smith v. CH2M Hill, Inc.*, 521 F. App'x 773, 775 (11th Cir.

6

2013). The court is not tasked with determining the adequacy of Plaintiff's proposed comparator or the facts surrounding the comparator's situation at this stage of the litigation. Rather, the court need only assess Plaintiff's Amended Complaint to determine if he has alleged sufficient facts that support a plausible claim of race discrimination. *See Cobb v. Marshall*, 481 F. Supp. 2d 1248, 1257 (M.D. Ala. 2007) ("In the employment discrimination context, a Title VII complaint is not subject to a Rule 12(b)(6) dismissal merely because it fails to allege all of the facts needed to support a prima facie case of discrimination.") (citation omitted). The court is satisfied that, at this stage, he has.[3]

The court is satisfied that Plaintiff's Amended Complaint gives Defendant "fair notice of what the . . . claim is and the grounds upon which it rests," Plaintiff's race discrimination claim may proceed. *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) ("In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party.").

  a. **Plaintiff's Claim of Retaliation**

Title VII prohibits employers from retaliating against employees or applicants for employment because an individual has opposed an unlawful employment practice under Title VII "or because [an individual] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. §§ 2000e–2(a), 2000e–3(a). In order to sufficiently plead a Title VII retaliation claim, Plaintiff must plausibly allege that (1) he engaged in statutorily protected conduct, (2) he suffered an adverse employment action, and (3)

---

[3] The court recognizes that any dispute or disagreement over the sufficiency of the evidence or the adequacy of comparator evidence is to be addressed at a later stage, such as in a Rule 56 motion.

there was a causal link between the protected activity and the adverse action. *Scott v. Sarasota Doctors Hosp., Inc.*, 688 F. App'x 878, 883 (11th Cir. 2017) (citing *Bryant v. Jones*, 575 F.3d 1281, 1307-08 (11th Cir. 2009)).

Here, the court concludes that, at this stage in the litigation, Plaintiff has plausibly pleaded a claim of retaliation.

### 1. Plaintiff Has Plausibly Alleged that He Engaged in Statutorily Protected Conduct

Title VII "recognizes two forms of protected conduct." *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1350 (11th Cir. 1999). "An employee is protected from discrimination if (1) 'he has opposed any practice made an unlawful employment practice by this subchapter' (the opposition clause) or (2) 'he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter' (the participation clause)." *Id.* (citing 42 U.S.C. § 2000e-(3)a). "[T]he protection afforded by [Title VII] is not limited to individuals who have filed formal complaints, but extends as well to those . . . who informally voice complaints to their superiors" under the opposition clause. *Zarza v. Tallahassee Hous. Auth.*, 686 F. App'x 747, 753 (11th Cir. 2017) (citing *Rollins v. State of Fla. Dep't. of Law Enforcement.*, 868 F.2d 397, 400 (11th Cir. 1989)). However, certain actions, such as filing an EEOC charge, clearly qualify as "statutorily protected activity" under the participation clause. *Id.*; *see Scott v. Sarasota Doctors Hosp., Inc.*, 688 F. App'x 878, 884 (11th Cir. 2017).

Plaintiff's Amended Complaint alleges that he filed a charge with the EEOC on August 24, 2018. (Doc. # 16 at ¶ 22). Filing an EEOC Charge is quintessential form of "participation," and squarely falls within the ambit of statutorily protected conduct. Therefore, Plaintiff has satisfied this element at this stage of the litigation.

### 2. Plaintiff Has Plausible Alleged that He Suffered an Adverse Employment Action

An adverse employment action is an action that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Forbes v. City of N. Miami*, 509 F. App'x 864, 867 (11th Cir. 2013) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405 (2006)) (internal quotation marks omitted). To be an "adverse employment action" the action must impose a "materially adverse effect on the plaintiff." *Crawford v. Carroll*, 529 F.3d 961, 973 (11th Cir. 2008).

As a result of Plaintiff's second determination hearing, Plaintiff suffered a four-day suspension without pay and a revocation of authorization for outside work. The Eleventh Circuit has held that:

> [A]s a matter of law, important conditions of employment include discharges, demotions, refusals to hire or promote, and reprimands. . . . In addition, any other conduct that 'alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee' qualifies as an adverse employment action.

*Akins v. Fulton Cty., Ga.*, 420 F.3d 1293, 1300 (11th Cir. 2005) (citing *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 587 (11th Cir.2000)) (quotation and citation omitted). A suspension and deauthorization to do outside work plainly fit into the definition of "adverse employment action." The court concludes that Plaintiff has sufficiently alleged that he suffered an adverse employment action.

### 3. Plaintiff Has Plausibly Alleged a Causal Link

The Eleventh Circuit has construed the causal link "element broadly so that 'a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated.' " *Zarza*, 686 F. App'x at 753 (quoting *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1278 (11th Cir. 2008) and *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th

9

Cir. 1998)). The causal element may be satisfied by showing a close temporal proximity between the protected activity and the adverse employment action. *Thomas v. Cooper Lighting Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007). However, a close temporal proximity is insufficient if the Defendant provides "unrebutted evidence" that the decision maker in the adverse employment action was unaware of the protected activity. *Brungart v. BellSouth Telecomms. Inc.*, 231 F.3d 791, 799 (11th Cir. 2000).

Here, Plaintiff claims that, after he filed his Charge with the EEOC on August 24, 2018, he had another determination hearing that resulted in a four-day suspension without pay and a revocation of authorization for outside work. Plaintiff then supplemented his EEOC Charge and appealed the discipline, after which Defendant proceeded to reduce Plaintiff's suspension time so that Plaintiff had no appeal rights. (Doc. # 16 at 14-15, ¶¶ 66-72). These actions, Plaintiff claims, "were taken against Plaintiff in retaliation for Plaintiff's filing of an EEOC charge against Defendant," which Defendant was aware of at all relevant times. (*Id.* ¶ 72). Treating the facts alleged in the Amended Complaint as true, the court concludes that Plaintiff has sufficiently alleged a causal link between his EEOC Charge and the disciplinary action. He has plainly stated the facts which support his claim, and those facts plausibly allege a retaliation claim.

Thus, as with his race discrimination claim, Plaintiff's retaliation claim may proceed.

## IV. Conclusion

For the reasons explained above, Defendant's Motion to Dismiss (*see* Doc. # 8) is due to be denied. An Order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this February 5, 2020.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE